**In the Matter of Stephen J. AYOUB, Debtor.**

**Bankruptcy No. 82–1722.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 21, 1987.

Russell S. Bogue, III, Tampa, Fla., for debtor.

James D. Wing, Miami, Fla., David G. Mulock, Tampa, Fla., Francis H. Cobb, Tampa, Fla., for John Kearney, Creditor.

## ORDER ON MOTION TO REOPEN CHAPTER 7 CASE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an aborted Chapter 11 case which was converted into a liquidation case. On January 3, 1986, the Trustee filed a Report of No Distribution, and on February 20, 1986, the case was closed as a no-asset case by entry of a Final Decree. The present controversy before this Court has a procedurally convoluted background in which the principal actors are the wrong parties to begin with, both of whose standing even to argue the matter is highly questionable. In order to put the matter in the proper posture a recap of the historical background should be noted, which reveals the following:

On August 24, 1982, Stephen J. Ayoub, the Debtor (Debtor), filed a voluntary Petition under Chapter 11. The Petition was accompanied by a list of the Debtor's ten largest unsecured creditors, which listed only three creditors: The First National Bank of Clearwater in the amount of $271,-654.29; Shelby Ostensen & Paul Argentiere in the amount of $20,000.00; and Freedom Savings and Loan in the amount of $25,000.00. On September 16, 1982, this Court entered an order on its own motion and directed the Debtor to file a Schedule of Assets and Liabilities, a Statement of Financial Affairs, a Statement of Executory Contracts, and the 219(b) Statement, which at that time required attorneys to disclose the fee arrangement with the Debtor. On October 5, 1982, counsel for the Debtor filed the 219(b) Statement and also the Statement of Financial Affairs of a Debtor engaged in business and the Summary of Assets and Liabilities.

In response to question 10 on the Statement of Financial Affairs which called for the disclosure of suits, executions and attachments, the Debtor stated as his answer "yes" without specifying, however, the nature of his involvement in the lawsuits referred to in the answer. The Schedule of Liabilities listed the same unsecured creditors whose names were furnished earlier

and listed as secured creditors the First National Bank of Clearwater, stated as having a lien on a 1979 BMW, and named counsel of record for the Debtor as being Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., without indicating the nature of the collateral but stating it is to secure costs and fees for the bankruptcy proceeding. On the Schedule of Assets the Debtor listed his assets as some cash, some bank deposits, and in answer to question Q, which calls for the disclosure of contingent and unliquidated claims of every nature including counterclaims, the Debtor answered in the negative stating "None".

On August 1, 1983, the Debtor filed a Notice of Conversion. On August 4, 1983, this Court entered an order and converted the Chapter 11 case to a Chapter 7 case and appointed Lynn Tepper Sestak (Trustee) as interim trustee. While there is no record of the examination of the Debtor at the § 341 Meeting, since no creditor appeared, it is fair to assume that the examination of the Debtor was merely perfunctory. On September 16, 1983, the Debtor filed what is called a Supplemental Amendment to Schedule A-3, which for the first time listed 75 creditors additional to the original three scheduled. The Supplemental Amendment, which was not signed and verified by the Debtor as required by Bankruptcy Rule 1008, while it stated the name and address of the creditors, it did not indicate the amount owed or the nature of the obligation owed to these creditors.

On September 30, 1983, the Debtor filed a new Supplemental Amendment and added one additional creditor. The amendment again was not signed and verified by the Debtor and again did not indicate the amount or the nature of the liability. Inasmuch as no complaints objecting to discharge were filed and neither were any complaints which sought a determination of nondischargeability of any debts pursuant to § 523(c) of the Bankruptcy Code, on November 18, 1983, the Debtor received his discharge.

On December 17, 1983, or approximately 19 days after the entry of the discharge, the Debtor filed an amendment to Schedule B-4. The amendment the first time stated an exemption claim under Article X of the Florida Constitution, the Debtor's interest in a lawsuit identified as *Stephen J. Ayoub, et al. vs. John E. Kearney, et al.*, Case No. 83-342, which was then pending in the U.S. District Court for the Middle District of Florida, Tampa Division. The Debtor stated that the lawsuit has no real value and the Debtor wanted to include this cause of action in his personal property exemptions available to debtors in this state pursuant to Article X as mentioned earlier. Again, this amendment, just like the earlier amendments, was not verified by the Debtor but indicated that a copy of same was furnished by mail to the Trustee, Lynn Tepper Sestak, 7135 State Road 52, Suite 202-A, Hudson, Florida. The record fails to reveal any activity in the case whatsoever between December 7, 1983, when the amendment to Schedule B-4 was filed, and July 2, 1985, when this Court issued an order directing the Trustee to complete the administration of the estate. On January 3, 1986, the Trustee filed a Report of No Distribution and on February 20, 1986, this Court entered a Final Decree and closed the case.

This Court is satisfied and it is without dispute that while the case was still pending the Debtor was a successful plaintiff in a lawsuit against John E. Kearney in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida, in and for Hillsborough County (Circuit Court), but not in the lawsuit which was scheduled by the Debtor on his Schedule B-4 which he claimed as exempt which was pending in the United States Court for the Southern District of Florida, Tampa Division. It should be noted that the Circuit Court lawsuit was never scheduled by the Debtor as one of his assets and was not claimed as exempt. It further appears that the Circuit Court lawsuit was concluded by jury trial in which the jury awarded to the plaintiff a verdict against Kearney in the amount of $220,000.00.

Kearney promptly filed a Motion NOV in the Circuit Court based on the contention that the chose of action does not belong to the Debtor but to the estate of the Debtor,

and the Debtor has no standing to assert a claim which must be asserted by the Trustee. Based on this contention, the state court granted Kearney's Motion and did set aside the jury verdict. The Debtor filed a timely Motion for Reconsideration of the order. This Motion was heard by the circuit judge, but the ruling was withheld on same pending a determination of the Debtor's right to this chose of action by this Court.

In order to accomplish this, the Debtor filed a Motion to Clarify Exemption on June 18, 1986. On June 24, 1986, this Court entered an order striking the Motion to Clarify Exemption on the basis that it was filed in the closed case, therefore, this Court was without jurisdiction to consider the motion. On July 9, 1986, the Debtor filed a Motion to Reopen the Case in order to permit this Court to consider the Debtor's previous Motion to Clarify Exemption.

On September 12, 1986, the Trustee filed a "Consent to the Debtor's Motion to Clarify Exemptions," even though, of course, there was no longer a Trustee in the case, the Trustee having been discharged when the case was closed. In addition, there was no new Trustee appointed, since the case was yet to be reopened. Shortly thereafter R. Park Newton, III, who claimed to be a creditor of the Debtor, filed a Creditor's Consent to the Clarification of and Objection to Debtor's Claim of Exemption. The consent was filed by the lawfirm of Shackleford, Farrior, Stallings & Evans, P.A., the same lawfirm which represents Kearney. On October 14, 1986, the same lawfirm filed a withdrawal of its consent stating no reasons for the withdrawal. On October 14, 1986, Kearney, the defendant against whom the jury verdict was rendered in the Circuit Court case, filed an objection to the Motion to Reopen the Case and an objection to the Debtor's claim of exemption. The matter was heard in due course by this Court, and this Court entered an order and denied the Motion to Reopen the case. The basis for the denial was set forth in the order in which this Court made a determination that the Debtor's attempt to amend its Schedule B-4 filed on December 4 was defective as a matter of law because it was not signed and verified by the Debtor, and for this reason there was no reason to reopen the closed case in order to clarify the claim of exemption. Moreover, the Court found that what was claimed as exempt by the amendment filed on December 4 was a lawsuit then pending in the U.S. District Court for the Middle District of Florida and did not mention the lawsuit pending in the Circuit Court, a lawsuit which was never mentioned during the entire proceeding either in the Schedules of Assets nor in the Statement of Financial Affairs, the original Schedule B-4, or in the amended Schedule B-4. The Court also stated that since the attempted amendment was not filed until after the discharge was granted, it was untimely. Based on the foregoing, this Court entered an order and denied the Motion to Reopen the Chapter 7 Case.

The Debtor promptly filed a timely Notice of Appeal of the Order Denying the Motion to Reopen Chapter 7 Case and filed a Designation of Record on Appeal. This appeal is currently pending before the district court. On December 15, 1986, the Debtor filed a Renewed Motion to Reopen the Chapter 7 Case and sought the case to be reopened for the purpose of conducting a full evidentiary hearing in order to determine whether the Circuit Court lawsuit was exempt or in the alternative, was abandoned by the Trustee. Therefore, so claims the Debtor, he shall be allowed to claim the verdict attained in that lawsuit as exempt, or in the alternative, that a trustee should be appointed in order to participate in resolving any conflicting claims to the $220,000.00 verdict and sought a judgment to be awarded by the Circuit Court in favor of the Debtor against Kearney.

The matter was heard in due course, at which time this Court again heard argument of counsel for the respective parties and considered the record and now finds and concludes as follows:

The right to reopen a closed estate is specifically recognized by the Bankruptcy Code, which in § 350 provides in subclause (b) that:

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

This section is now implemented by Bankruptcy Rule 5010, in which it merely states that "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause pursuant to § 350(b) of the Code."

Obviously, the initial inquiry must be addressed to the question of standing, that is, standing to file a motion to reopen, and standing to object to the motion. Considering the first question it is quite evident that if the purpose of reopening the estate is to administer assets, only creditors have a standing to seek an additional administration and clearly not the debtor. If the purpose of reopening is to accord relief to the Debtor, it is obvious that nobody but the Debtor has a standing to seek to reopen the closed case.

 Considering the motion under consideration, it is evident that the only possible way one can sustain the standing of this Debtor is to obtain a favorable ruling on its motion if the case is reopened for the purpose of according relief to the Debtor, and in this particular instance to clarify his claim of exemption and determine that he is or he is not entitled to the exemption he is now claiming. Unfortunately, this very issue is now directly involved in a pending appeal before the district court. For obvious reasons it would be highly improper for this Court to inject itself in this particular controversy which should be resolved by the District Court on appeal, which involves this Court's ruling challenged by the Debtor on appeal, that the amendment to his claim of exemption was facially improper and cannot be recognized. If the Motion as intimated but not very well articulated sought an opportunity to assert some claim to the jury verdict on behalf of the estate, the Debtor is clearly not the proper party to do so for obvious reasons since, as noted earlier, only creditors have standing to seek the administration of additional assets and not the Debtor.

 Considering the objection to the Motion to Reopen the estate by Kearney, it is evident that Kearney, the defendant in Circuit Court against whom the jury verdict was granted, has no standing to oppose the same. While his opposition is quite understandable and it takes no great imagination to assume that he does not ever desire to pay this jury verdict to anyone, this is no basis for recognizing his standing to object to the Motion to Reopen the closed case. It is deplorable that the creditors in this estate so far have not expressed any desire to pursue this matter. It is only the half-hearted participation of the former attorney of the former trustee who indicated any interest in the matter in which, of course, he no longer has any cognizable interest simply because, as noted earlier, there is no longer a trustee. Thus, it is clear that they do not have any standing to seek an order reopening this closed case.

Based on the foregoing, this Court is satisfied that the Motion to Reopen this closed case for the purposes stated is improper and should not be granted, and the ultimate question of the Debtor's right to assert an exemption claim to the jury verdict or any other claim on any other theory should be initially determined on appeal by the district court. This conclusion should not prevent, however, the proper party of interest from seeking a reopening of the estate for the purpose of asserting a claim on behalf of the estate on the jury verdict entered in the state court lawsuit.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Reopen the Chapter 7 Case be, and the same is hereby, denied without prejudice.